An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-902

NORTH CAROLINA COURT OF APPEALS

Filed: 31 December 2014

IN THE MATTER OF:

   H.H.

                                    Polk County

   R.H.                           Nos. 13 JA 31-32

_____

C.A.T.,
  Plaintiff

  v.                          Henderson County
                                No. 09-CVD-660

D.W.H.,
  Defendant.

Appeal by respondent from orders entered 28 April 2014 and 28 May 2014 by Judge Peter B. Knight in Polk County District Court and Henderson County District Court. Heard in the Court of Appeals 3 December 2014.

> *Feagan Law Firm, PLLC, by Phillip R. Feagan, for petitioner-appellee Polk County Department of Social Services.*

> *Michael E. Casterline for respondent.*

> *The Opoku-Mensah Law Firm, PLLC, by Gertrude Opoku-Mensah, for Guardian ad Litem.*

DAVIS, Judge.

C.A.T. ("Respondent") appeals from the trial court's 28 April 2014 review hearing order and the 28 May 2014 custody order concerning her two minor children. On appeal, Respondent argues that the trial court erred in (1) failing to conduct an inquiry regarding another attorney's substitution for Respondent's court-appointed counsel at the review hearing; (2) terminating jurisdiction under Chapter 7B of the North Carolina General Statutes following the review hearing and entering a custody order pursuant to Chapter 50 while the underlying adjudication order was on appeal; and (3) delegating its judicial function of determining Respondent's visitation rights to the minor children's father. After careful review, we affirm in part and remand in part.

**Factual Background**

Respondent and D.W.H. ("Mr. H.") are the parents of two minor children: H.H. ("Heather"), age 11, and R.H. ("Rob"), age 9.[1] Prior to November 2013, Heather and Rob lived primarily with Respondent pursuant to a consent order entered on 11 April 2011 regarding the custody of the minor children. On 21 November

---

[1] The pseudonyms "Heather" and "Rob" are used throughout this opinion to protect the identity of the minor children and for ease of reading. N.C.R. App. P. 3.1(b).

2013, Respondent called 911 and requested that Heather and Rob be picked up because she was unable to provide for their care. After placing the call to 911, Respondent called Mr. H., and he agreed to care for Heather and Rob. Respondent arranged to meet Mr. H. that evening in the parking lot of a shopping center in Hendersonville, North Carolina. As she was driving the children to meet Mr. H., she told them that she was "going to jail because she abused them and that the juveniles would not see her anymore." She then made the children wait outside the car in the dimly-lit parking lot until Mr. H. arrived while she remained inside the vehicle. Mr. H. picked up Heather and Rob and brought them to his home.

On 3 December 2013, the Polk County Department of Social Services ("DSS") filed petitions alleging that Heather was a neglected and dependent juvenile and that Rob was an abused, neglected, and dependent juvenile. Both petitions also alleged that Respondent had attempted to regain physical custody of the children by filing a motion for emergency custody the day before. The trial court conducted a hearing on the petitions on 14 January 2014 and entered an order on 25 February 2014 adjudicating Heather neglected and dependent and adjudicating Rob abused, neglected, and dependent. The trial court concluded

that it was in the children's best interests that DSS maintain legal custody of them and that they remain placed with Mr. H. Respondent appealed the adjudication order to this Court in *In re H.H.*, No. COA14-650, ___ N.C. App. ___, ___ S.E.2d ___ (filed Dec. 2, 2014).[2]

On 22 April 2014, the trial court held a 90-day review hearing on the 25 February 2014 order removing the children from Respondent's custody. Respondent was initially present at the proceeding but left the courtroom shortly thereafter and, as a result, did not participate in this hearing. At the hearing, the trial court received the reports and recommendations of DSS and the guardian *ad litem* and heard testimony from Guy Shearer ("Mr. Shearer"), the DSS social worker assigned to Heather's and Rob's cases. On 28 April 2014, the trial court entered an order (1) terminating DSS's legal custody of Heather and Rob based on its determination that State intervention in the matter was no longer necessary; and (2) granting full custody, care, and control of the children to Mr. H. The trial court proceeded to

---

[2] In *H.H.*, this Court affirmed the trial court's adjudications of Heather and Rob as neglected juveniles and its adjudication of Rob as an abused juvenile but reversed its adjudications of dependency as to both children. *Id.* at ___, ___ S.E.2d at ___. We also vacated the portion of the order requiring Respondent to maintain stable housing and employment. *Id.* at ___, ___ S.E.2d at ___.

enter a custody order in the parties' civil custody case on 28 May 2014 granting Mr. H. sole legal and physical custody of Heather and Rob and providing Respondent with supervised visitation with the children. Respondent appeals from the trial court's 28 April and 28 May 2014 orders.

**Analysis**

## I. Substitution of Counsel

Respondent's first argument on appeal is that the trial court erred by failing to inquire into whether the legal representation of Respondent by Ryan Bradley ("Mr. Bradley") at the review hearing was in accordance with the North Carolina Office of Indigent Defense Services ("IDS") rules regarding representation by court-appointed counsel. Pursuant to N.C. Gen. Stat. § 7A-498.3, IDS is authorized to promulgate rules and procedures in connection with its mandate to provide quality representation to indigent clients who are entitled by law to legal representation. Under the Indigent Defense Services Act, codified in Article 39B of Chapter 7A of the North Carolina General Statutes, the appointment and representation of indigent clients by appointed counsel must follow the rules and procedures adopted by IDS. N.C. Gen. Stat. § 7A-498.3(c) (2013); *see also State v. Webb*, ___ N.C. App. ___, ___, 742

S.E.2d 284, 286 (2013) ("Our General Statutes state that counsel shall be appointed in accordance with rules adopted by the Office of Indigent Defense Services." (citation, internal quotation marks, and alteration omitted)).

Here, the record indicates that Rick Daniel ("Mr. Daniel") was appointed by the court to represent Respondent. However, at the review hearing, Mr. Bradley, an attorney who practices with Mr. Daniel, appeared instead on Respondent's behalf. Under the IDS rules concerning the appointment of counsel,

> [t]he attorney named in the appointment order shall not delegate to another attorney any material responsibilities to the client, including representation at critical stages of the case, unless the court finds in open court that the substitute attorney practices in the same law firm as the appointed attorney and is on the list of attorneys who are eligible for appointment to the particular case, that the client and the substitute attorney both consent to the delegation, and that the delegation is in the best interests of the client.

IDS Rule 1.5(d)(2) (2013). Respondent contends that the trial court's failure to make findings in open court regarding this substitution of counsel in accordance with the above rule constituted reversible error.

Our Court recently addressed this issue in *Webb*, ___ N.C. App. at ___, 742 S.E.2d at 286-87. We explained that where the

trial court acts contrary to the statutory mandate requiring it to make findings regarding the substitution of counsel, such action does not necessarily rise to the level of reversible error. *Id.* at ___, 742 S.E.2d at 286. Rather, appellants "must show not only that a statutory violation occurred, but also that they were prejudiced by this violation." *Id.* at ___, 742 S.E.2d at 287. To demonstrate prejudice, the party must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached . . . ." N.C. Gen. Stat. § 15A-1443 (2013).

In the present case, Respondent has failed to demonstrate to this Court how she was prejudiced by the trial court's failure to make findings concerning Mr. Bradley's ability to serve as her attorney at the review hearing. Respondent chose to leave the courtroom and not participate in the proceeding despite Mr. Bradley's cautioning her as to "the likelihood of the Court's ruling should she choose not to stay."

At the review hearing, Mr. Shearer testified that Respondent had failed to complete any of the recommended anger management and conflict resolution courses, had not obtained a psychological evaluation as required by her case plan, and — other than an online parenting class — had failed to take steps

to comply with the DSS case plan. Mr. Shearer also testified that it was DSS's recommendation that custody be given to Mr. H. as he had "completed all services that have been asked of him and the children seem to be happy in his care." The guardian *ad litem* and the Jackson County Department of Social Services, which had also been involved in the case, likewise recommended that legal custody be given to Mr. H. As such, given the evidence presented by DSS and the fact that Respondent elected not to participate in the hearing, we cannot say that the outcome of the proceeding would likely have been different if the trial court had inquired into the circumstances regarding the substitution of counsel.

## II. Termination of Jurisdiction Under Chapter 7B

Respondent next contends that the trial court erred by terminating jurisdiction under Chapter 7B while her appeal of the adjudication order was pending. We disagree.

N.C. Gen. Stat. § 7B-1003, the statute governing the disposition of juvenile cases pending appeal, provides, in pertinent part, as follows

> (b) Pending disposition of an appeal, unless directed otherwise by an appellate court . . . the trial court shall:
>
> > (1) Continue to exercise jurisdiction and conduct hearings under this

> Subchapter with the exception of
> Article 11 of the General
> Statutes; and
>
> (2) Enter orders affecting the custody
> or placement of the juvenile as
> the court finds to be in the best
> interests of the juvenile.

N.C. Gen. Stat. § 7B-1003(b) (2013).

This statute makes clear that the trial court continues to possess jurisdiction over a juvenile matter and may address and modify custodial arrangements while an appeal is pending. *See In re M.I.W.*, 365 N.C. 374, 377, 722 S.E.2d 469, 472 (2012) (explaining that in enacting N.C. Gen. Stat. § 7B-1003, "the General Assembly recognized that the needs of the child may change while legal proceedings are pending on appeal"). We do not, however, read N.C. Gen. Stat. § 7B-1003 as compelling the trial court to retain Chapter 7B jurisdiction during the entire time in which an appeal is pending, as such a reading would restrict the trial court's ability to address changing circumstances and "[e]nter orders affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile." N.C. Gen. Stat. § 7B-1003(b)(2).

Chapter 7B of the General Statutes specifically authorizes a trial court to "determine whether or not jurisdiction in the juvenile proceeding should be terminated and custody of the

juvenile awarded to a parent or other appropriate person pursuant to G.S. 50-13.1, 50-13.2, 50-13.5, and 50-13.7." N.C. Gen. Stat. § 7B-911 (2013). In order to terminate jurisdiction in the juvenile proceeding and award custody of the child to a parent under Chapter 50, the trial court must make findings and conclusions that support the entry of a custody order or, if the child is already the subject of a civil custody order, make findings and conclusions that support the modification of the existing custody order. N.C. Gen. Stat. § 7B-911(c)(1).

Finally, the trial court must make the following findings:

> a. There is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding.
>
> b. At least six months have passed since the court made a determination that the juvenile's placement with the person to whom the court is awarding custody is the permanent plan for the juvenile, though this finding is not required if the court is awarding custody to a parent or to a person with whom the child was living when the juvenile petition was filed.

N.C. Gen. Stat. § 7B-911(c)(2).

Here, the trial court followed this statutory procedure when terminating jurisdiction over the juvenile proceeding and entering its order modifying the parties' prior civil custody. In its orders, the trial court determined that "[t]here no

longer exists a need for continued State intervention on behalf of these children as their father has provided a safe, stable home for their continued residence." The trial court also noted that the children were residing with Mr. H. when the juvenile petitions were filed, thereby eliminating the necessity for a finding concerning the passage of time and the permanent plan for the children under N.C. Gen. Stat. § 7B-911(c)(2)(b).

In its order modifying custody, the trial court made findings of fact regarding the substantial change in circumstances that had occurred since the entry of the prior custody order. Specifically, the court found that (1) Respondent had admitted to engaging in physical violence toward Rob and repeatedly hitting him with a belt; (2) Respondent had refused to enter into a safety plan or otherwise cooperate with DSS; (3) Respondent called 911 requesting that someone pick up the minor children because she could not care for them; (4) Respondent ultimately brought the minor children to Mr. H. and he assumed care of them; (5) Heather and Rob have been enrolled in the school district where Mr. H. resides and have been excelling in school since being placed with him; (6) Respondent has failed to exercise visitation or contact the children since they were removed from her custody; (7) DSS has concluded that

Mr. H. is a fit and proper person to have custody of the children; (8) Heather was adjudicated neglected and dependent on 14 January 2014; (9) Rob was adjudicated abused, neglected, and dependent on 14 January 2014; and (10) Respondent had failed to complete her court-ordered case plan. Respondent has not challenged any of these findings on appeal.

While this Court very recently reversed the trial court's determination that Heather and Rob were dependent juveniles in our opinion concerning the underlying adjudication order because they were living with Mr. H. — a parent who is willing and able to provide for their care and supervision, *H.H.*, ___ N.C. App. at ___, ___ S.E.2d at ___, we believe that the trial court's findings nevertheless demonstrate a substantial change in circumstances warranting modification even without the adjudication of dependency. Indeed, the trial court's order makes clear that Respondent's physical abuse of Rob, her voluntary relinquishment of custody to Mr. H., her refusal to cooperate with DSS, and the fact that the children were thriving in Mr. H.'s care, were the primary grounds for its conclusion that a substantial change in circumstances affecting the welfare of the children had occurred. We also note that our decision in *H.H.* concerning the adjudication order did not order any further

proceedings that would require the trial court to reassert jurisdiction over the children under Chapter 7B. *Id.* at ___, ___ S.E.2d at ___. Accordingly, we hold that the trial court acted within its authority in terminating jurisdiction under Chapter 7B and entering the custody order pursuant to Chapter 50 while Respondent's appeal of the adjudication order was pending.

## III. Visitation

Respondent's final argument is that the trial court erred in the portions of its orders addressing Respondent's visitation rights with Heather and Rob. In the decretal portion of both orders, the trial court awarded Respondent a minimum of one hour per week of supervised visitation with the children "as arranged upon [Respondent's] reasonable request to [Mr. H.], and as supervised by [Mr. H.] or someone satisfactory to [Mr. H.]." Respondent contends that this award of visitation was insufficient in providing a minimum outline of the circumstances under which she may exercise her visitation with Heather and Rob.

Our Court has previously explained that when a trial court awards visitation to a parent, it is "required to provide a plan containing a minimum outline of visitation, such as the time, place, and conditions under which visitation may be exercised."

*In re T.H.*, ___ N.C. App. ___, ___, 753 S.E.2d 207, 219 (2014); *see also In re E.C.*, 174 N.C. App. 517, 523, 621 S.E.2d 647, 652 (2005) ("An appropriate visitation plan must provide for a minimum outline of visitation, such as the time, place, and conditions under which visitation may be exercised.").

In *In re W.V.*, 204 N.C. App. 290, 295, 693 S.E.2d 383, 387 (2010), we held that the trial court's order awarding the respondent "weekly visitations supervised by petitioner" was insufficient to establish a minimum outline for visitation and required remand "for clarification of the visitation plan." Similarly, in *In re J.P.*, ___ N.C. App. ___, ___, 750 S.E.2d 543, 548 (2013), we concluded that the visitation portion of the trial court's order was inadequate where it merely required the petitioner to offer supervised visitation to the respondent every other week and failed to make findings and conclusions "as to the time, place, and conditions of an appropriate visitation plan."

While the provision for visitation in the present case is slightly more detailed than those at issue in *W.V.* and *J.P.*, we do not believe that it comports with the guidelines established by our prior cases, which are intended to safeguard a parent's rights to visitation. *See E.C.*, 174 N.C. App. at 522, 621

S.E.2d at 652 ("[T]he court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place, and conditions under which such visitation rights may be exercised." (citation, quotation marks, and brackets omitted)). The trial court's orders do not provide any guidance as to where visits should occur and leave significant discretion to Mr. H. in scheduling visits, determining who shall supervise the visits, deciding the duration of the visits (beyond the minimum requirement of one hour per week), and imposing any other conditions relating to visitation. Accordingly, we remand for additional findings and conclusions as to an appropriate visitation plan for Respondent that provides, at a minimum, the time, place, and conditions of Respondent's visits in file number 09 CVD 660. *See J.P.*, ___ N.C. App. at ___, 750 S.E.2d at 548; *W.V.*, 204 N.C. App. at 295, 693 S.E.2d at 387.

## Conclusion

For the reasons stated above, we affirm in part and remand in part.

AFFIRMED IN PART; REMANDED IN PART.

Judges ELMORE and BELL concur.

Report per Rule 30(e).